It's supposed to be within 20 days of receiving notice of the Commission's decision. That's correct. I guess what we might be struggling with, what is there in the record by way of certification, affidavit, return receipt, or other evidence establishing the date on which FCN received notice of the Commission's decision? There's no affidavit. There's no certification.  There's no certification of jurisdictional issue at the trial level raised by either the Attorney General or by the claimant's attorney. And the reason why I'm saying that is because here, the first time that issue has been raised, it's been on appeal. Well, we have a right to do that. Totally agree. And that's why in our reply, we did, in fact, attach the envelope that indicated the… But we can't consider anything that isn't within the record. It's the obligation of the party seeking to invoke the jurisdiction of the circuit court in this special type of action to establish that they complied with the jurisdictional requirements. There's nothing in this record. To the extent that when we look at the statute and we look at what is required for filing, there are only the two requirements that I mentioned, the bond and the notice of intent to file. We understand that, but you have to, as the party seeking to invoke this jurisdiction of the circuit court, include within the record whatever evidence there is that you came within the statute of limitations, the statute for filing. And in this case, there's nothing. I would indicate that in order that the filings that we indicated that we did file within 20 days is part of the record and that… But it's not supported by an affidavit by anyone. It's not supported by an affidavit. I did not come across the case that indicated the affidavit was required, but to the extent that it was, in fact, alleged in the record and that there was no challenge to that, I would offer that that is part of the record, which would presumptively satisfy… The Supreme Court in Illinois State Treasurer, a case that had some bearing on the last case, specifically says that the requirement of serving summons within 20 days after filing a notice of a commission decision, quote, must affirmatively appear in the record.  I recall indicating that the… Of course, the affirmative in that issue was the bond that the Illinois State Treasurer did not file, which then the Supreme Court directed the Treasurer to the language of the statute to indicate that this was a prerequisite. We understand that, but it specifically says that it must affirmatively appear in the record. I did not see where the proof of filing within 20 days of receipt of the order was the indication by the Supreme Court that that is what needed to be affirmatively established. Well, we'll have to look at the issue, but, you know, I can see how maybe you are feeling a little bit misled by the circumstances. Make a suggestion. If it happens again, there's a couple of options, okay? You could ask for stipulation, since this issue arose, or file a motion in this Court to supplement the record with the envelope. So… I subsequently did come across that. And I would offer to the Court that the envelope that was attached obviously was not a part of the record that was certified. However, what it does establish for this Court is that there was, in fact, a timely filing. And the reason why that is important is because the envelope does not in and of itself attempt to somehow correct a mistake in the sense that we were beyond the date and there was some type of motion for leave to file post the 20 days after receipt of the order. But it's to, in fact, give this Court some solace in the sense that the filing was, in fact, timely. The – back to the jurisdiction of the commission in and of itself and the 45 days, according to the claimant's testimony at the hearing, he indicated that I requested that the nurse contact at that time my girlfriend and the editor at the final call to let them know I was in the hospital. Surely that statement can in no way put anyone on notice that an injury occurred in the process of someone attempting to perform their work-related duties. He could have been in the hospital for food poisoning. He could have been in the hospital visiting a family member. So to the extent that the message he said was given was simply that he was in the hospital, I would offer that neither the claimant nor the treasurer could hang their hat on that as sufficient notice to give – invest the commission with jurisdiction. And this is where counsel for the claimant indicated that we were splitting hairs or playing a game of semantics when the commission stated the following – the day following the accident, petitioner reported the accident himself to the editor. That is not in the record. It is not safe anywhere that the following day the petitioner reported the accident to the editor, in fact questioned by counsel, and following that day. Did you have an opportunity to report the accident yourself? Well, Thursday follows Monday, but it's not the following day. Eighteen follows twelve, but it's not the following number. So to the extent that something follows something else does not mean that it occurred on the following day. And why is that important? Because what counsel for the claimant has avoided in the argument, which I understand, is that his question to the claimant was, this letter that indicates in March of 2009, is that a memorialization of when you notified them of your work injury? Answer yes. If we go through February 28th, that would put it at 52 days. Before we even get to March, the timeline would have been blown with respect to the 45-day mandate to issue a specific type of notice to the alleged employer. And so that, I would offer, is against the manifest way of the evidence that came out of the hearing and as a part of the record, which is the claimant gave notice in March following, for sure, the injury in January or January 7th, 2009, but not the following day. So I would ask that the testimony of the claimant weigh heavily in this court's determination that the ruling of the commission was against the manifest way of the evidence on that point. Secondly, and very briefly, with respect to the determination that Kenneth Wright was an employee as opposed to an independent contractor, what's interesting to me is that the claimant cites to the September 3rd, 2009 letter multiple times to indicate that Kenneth Wright was employed by the final call. The record also indicates that Kenneth Wright acknowledged that he was employed by two other newspapers in the capacity of independent contractor. So to the extent that the letter says employed by, that does not in and of itself translate into being an employee, but simply that was services rendered on behalf of someone else. The nature of that relationship could vary between independent contractor or employee. What's critical in that determination is Kenneth Wright's own statement, and we know that there are multiple factors and it's a type of sliding scale to There's always a very difficult question whether somebody is an employee or independent contractor. Yes. Now, what weighs heavily in this case is the statement of the claimant himself. I was never given restrictions on what I could cover and not cover, do or not do. And we know that the most important factor is the issue of control. And when the claimant says I was never given any restrictions on what I could cover and not cover, do and not do, his own words takes him well out of the range of being an employee with respect to the final call. And the last major point that I'd like to raise to the court deals with MMI. So provided that he is found to be an employee, provided that jurisdiction is found, looking at MMI, arguendo, that, of course, is maximum medical improvement. And in this case, Kenneth Wright suffered an injury on January 7, 2009. He first sought medical attention in March of 2009. He had surgery on March 26, 2009. He had four subsequent medical appointments wherein he was directed to start rehab because that would impact his recovery tremendously. He had not done so, though he misrepresented to the doctor that he was engaging in rehab. Nevertheless, with each subsequent appointment, the movement of his knee became better. The first appointment was unlocked at 30 degrees. The second one, 90 degrees. The last one, completely unlocked. On June 20, 2009, it was completely unlocked such that he had free range of motion of his leg. Why is that important? Because Kenneth Wright delayed in going to rehab over a year after the surgery. And then when he presented for rehab, he indicated that he couldn't bend his knee at all and that he couldn't do a straight leg raise. Well, the Complainants Council has raised the argument multiple times. We didn't have any medical opinion to state this position. There's medical evidence, though. We would absolutely adopt it. The medical records that have been certified in this case that indicate that Kenneth Wright could move his knee freely in June of 2009. And, therefore, when he finished rehab in only one month, he was able to move his knee freely. Why is that important? Because the maximum medical improvement he achieved from rehab was moving his knee freely. Well, that's the exact same happenstance a year prior. So, here he delayed a year and somehow regressed, but he received the same medical improvement after rehab that he did the year before. And I would just offer that this is a situation that the court should not countenance. And that is, I'll delay in getting rehab. And that will add to my TTE benefits. Because once I finish rehab and reach an improvement that I had a year before, I'll get TTE benefits for all that time in between. Kenneth Wright did not pay for rehab when he went to accelerated rehabilitation. So, the statement cannot be made he didn't have the money. That bill is still outstanding. So, he could have gone to accelerated rehab a year prior and received the same benefit in 30 days. And had he done that, we wouldn't be standing here today. But he chose to not go for a year and then claim TTE benefits. And by way of history, he filed suit in October of 2009 and then went to rehab March of 2010. So, it was about five months after he filed suit is when he had an epiphany that he needed to go to rehab. And then he presented to rehab. Somehow, he had regressed all the way to where he was immediately after the surgery. And so, I would ask that for these reasons and other reasons stated in our brief that this court determined that the ruling of the commission was, in fact, against the manifest way of the evidence. Because I do understand that the court can look to see if there's anything that the commission could hang its hat on as a ruling, even if the court would determine differently. But in this case, the commission actually misstates, particularly with respect to notice, the evidence that is in the record. And that misstatement should not be affirmed. Thank you. Thank you, counsel. You have time to reply. Thank you. Counsel, you may respond. Good morning, Your Honors. Counsel. May it please the court. My name is Mary Labreck. I am an assistant attorney general here representing the unnamed defendant affiliate, Illinois State Treasurer, as ex officio custodian of the fund. Are both of you going to argue this case? Is counsel going to argue also? I will be splitting time with co-counsel. And how are you splitting the time? How are you splitting the time? In half. And I will focus on the jurisdictional issues that this court would like me to. Well, I have a question about this jurisdictional issue. You're correct that compliance with the filing requirement of 20 days must affirmatively appear from the record. And you're also correct it doesn't in this case. The counsel supplied a copy of the envelope with his reply brief. It's not supported by affidavit, but don't you think when you raise it for the first time on appeal, the fair thing for us to do is to vacate the order and send it back down for an evidentiary hearing on whether he complied with the statute or not? We don't think so, Your Honor. Why? One, we think that it's too late. Because the issue is not simply whether it was timely, but whether he complied with the statute. And the statute said that it was supposed to, and the statute says that you need to provide these things, and they have to be affirmatively provided in the record. Did you raise this issue before the trial court? No. Well, I mean, it's almost like checking and raising in a card game. You hold your cards under the table until it's too late for him to prove his case. And then you spring it on him. It occurs to me that you're right, it's not in the record, and the envelope is not supported by an affidavit. But the fact of the matter is, wouldn't the fair thing be just to vacate this order, send it back downstairs, and order the circuit court to hold an evidentiary hearing on the question of whether this case was filed within 20 days of receipt? Now, the envelope says it was mailed on the 23rd. He filed on, I believe, the 26th or 24th, one of the two. And if he received the envelope on the 23rd, I think it was marked the 21st, if he received it on the 23rd like he contends he did, it's been filed within the 20 days. Therefore, the circuit court had jurisdiction, and your jurisdictional argument is without merit. If he can't prove it, then in that particular case, the circuit court would be instructed to dismiss the appeal, dismiss the review. Well, we do think that it should have been proven in the circuit court, but we also have another jurisdictional argument, which is an adequate basis for dismissing. So we think there is no reason to remand it for that reason. And that reason is that the final call failed to satisfy the Act's requirements with respect to the request for summons, because Section 19F1 of the Act provides that in order to perfect jurisdiction in the circuit court, a plaintiff must file a written request for summons that contains the names and last known addresses of the parties of interest and their attorneys of record. Now, substantial compliance with these requirements has been held to be sufficient, but compliance can only be deemed sufficient if there is sufficient information to allow the clerk to properly serve the summons. And did you raise this issue before the trial court? No, we did not. Let me ask you the point of the question. Why did you not raise either of these theories before the trial? I can't answer that, Your Honor. I was not representing the treasurer at that time. Doesn't it seem a little unfair to wait until later? I mean, we all know, everyone here knows, we have an independent obligation to examine our own jurisdiction. So we understand that. And you've got a strong argument. And I think it's unnecessary to raise these arguments on appeal even. But isn't it, Justice Alba, a little unfair to be waiting until the appellate stays to raise it for the first time? I think it seems a little more unfair with the timeliness issue, with the request for summons issue, with the fact that there was no – the treasurer was named nowhere in the documents, not just in the request. But the treasurer's lawyer was named. The treasurer's lawyer was named, but a summons was not provided for the treasurer in the treasurer's name or that lawyer's name. And the only summonses issued were to the commission and to the claimant. Something does appear to have been sent to the treasurer's attorney, but whatever it was, it wasn't a summons on the commission. It was – the circuit court appears to have believed that the attorney general was represented in commission in this case. And – Was it pointed out – was that issue pointed out to trial court either, that there was a mistaken impression? No, Your Honor. Okay. But the final calls offered two responses to this argument, and it attempts to defeat the argument by suggesting that – by mischaracterizing it, that we are arguing that two summons should have been served on the treasurer instead of one. It asserts that service on the party's attorney is sufficient in service on the party and that we conceded that service on the treasurer was sufficient. But either proposition is correct. Our argument was that there was no proper service even on the treasurer because there was no summons addressed to his client. And we never conceded that either the treasurer or his attorney was properly served. What we said on page 19 to 20 of our brief was that the treasurer was not prejudiced in the sense that – prejudiced in his ability to defend the case because he was notified of the action and he was able to participate. But the Illinois Supreme Court in the Doherty case specifically said that the absence of that kind of prejudice, the actual ability to participate in the case, was not enough to save the court's jurisdiction. And the final call also argues that this case is comparable to a number of cases in which Illinois courts have found substantial compliance with the jurisdictional requirements, but these cases can be easily distinguished. In Old Ben Cole, the two closest cases are Old Ben Cole and Chambers. And in Old Ben Cole, the employer did not list the claimant as a party in interest or give the party's address, but the claimant's name was included in the caption in that case and twice in the body. In the body, the employer requested that summons be directed to Harry Harrell B. Culley Jr. and Wayne R. Reynolds, attorneys for Clifford Fry. Moreover, the court issued the proper number of summons in that case, each reading to each defendant in the case filed, Old Ben Cole Company Plaintiff versus Industrial Commission of Illinois on Clifford Fry Defendant. And in Chambers, the part failed to name the respondent's attorney of record, provide the addresses of the parties in interest, and designate a return date, but the certificate of mailing included the party's addresses and the name of the respondent's attorney of record, and the summons itself contained the return date. So when you looked at all the materials together, it was plain who summons was supposed to be served on, and it just wasn't in this case. And none of the cases that the final call cites, and none of the cases we have been able to find, involved a situation where there was no identification of the party in any of the filings with the request for summons or in which they failed to request a distinct summons for that party. And in Doherty, the name of the, in this case, unlike in Doherty, the name of the attorney who appeared for the treasurer was included, but your name appearing is not enough, particularly where the attorney is a member of a large institution that may represent multiple parties, including the commission. There was no suggestion that the attorney represented the treasurer, and the court apparently thought he represented the commission. And just as in Doherty, the entire package of filings failed to cause a third summons to issue. There were only the two summons, commission and claimant. If this court has no further questions, we will stand on our brief for the remaining issues. We urge this court to dismiss the appeal and vacate this court's judgment for lack of subject matter jurisdiction or on the alternative, affirm the circuit court's judgment, thereby upholding the commission's award of benefits. Thank you, counsel. Counsel, you may also respond. Good morning, Your Honors. Counsel, may it please the Court. My name is Hugh Lortiz, and I represent Mr. Kenneth Wright, the affiliate in this matter. He is also a claimant for workers' compensation benefits. Your Honors, I come before this court today to respectfully ask that this court affirm the lower court's decision. I will now respond to arguments raised by counsel for FCN. The first argument that counsel for FCN made was a jurisdictional notice argument in which FCN claims that the petitioner, or Mr. Wright in this case, reported the accident beyond the 45-day statutory requirement. But I think the letter showed that that is untrue. There's a mischaracterization of the letter on which FCN relies. That letter does not necessarily say when the notice was given to FCN. It simply demoralizes that notice was, in fact, given. The letter itself does not give a date on which FCN was notified by Wright. And Wright gave credible testimony, found credible by the commission and the arbitrator at the commission, that the following day he followed up with Richard Muhammad, he named someone specifically who was the editor of FCN, and told him, which is found on the record on page C110, that he could not walk as a result of the injury he had suffered on the bus on the way to cover a story. I think that is a very crucial fact that the attorney for FCN has ignored, and I think that this court should note that when weighing that there's absolutely no evidence here that the lower court's decision was against the manifest way of the evidence. If anything, the evidence is quite clear that notice was given within the 45-day requirement. Even then, FCN never, at arbitration, FCN did not allege that the notice was in any way defective or inaccurate. Therefore, the circuit court and the commission did not have to look into the quality of that notice because there was no prejudice alleged by FCN. FCN did have to allege some sort of prejudice in order for the lower courts to look into the quality and accuracy of that notice. But the credible testimony was enough, and the case law shows that that is enough. The next argument has to do with the employee relationship between Kenneth Wright and FCN. There's a very glaring omission in FCN's argument, and that is the fact that Mr. Wright's own name, as Kenneth Muhammad, is listed on the newspaper itself as staff photographer. Now, the final call has not given any explanation as to why an independent contractor or a freelance photographer would be listed on its own publication as a staff photographer among the editors, among other staff who run this newspaper. The letter itself that counsel for FCN sent to Mr. Wright shows that he was an employee. Now, if we look at the factors in cases such as where, we see that there was enough control. FCN owned the photographs. They went to retrieve the photographs after they terminated Mr. Wright, and they also owned the camera that he used in order to cover these stories. And the letter itself terminates employment. Why would anyone, any company, have to terminate an independent contractor? That's something that FCN has failed to explain. What do you mean, they terminate the contract or end the contract? Well, there's no indication that there was a contract, Your Honor. It just says employment, so that's all we can really go on. No, I was trying to emphasize what you were trying to say. Yes, so thank you, Larry. And that's exactly what we're emphasizing, that there's no indication in that letter that there was an independent contractor relationship and that he could no longer go and perform independent duties. And as far as FCN's argument as to Mr. Wright's alleged delay in obtaining his physical therapy, his rehabilitation following his surgery, Dr. Kermit Mohamed lists in one of his notes that it would take about 12 to 18 months for Mr. Wright to fully recover from this torn quadricep tendon that he had had surgery for. The reason that Mr. Wright was unable to find or to procure any rehabilitation services was because he was left to fend for himself. The final call in that letter, as we can see, terminated right in the middle of his injury shortly after his accident. He needed them the most. And without any benefits, without any medical benefits, TTP, anything of that nature, Mr. Wright had to find doctors who would treat him for free. Kermit Mohamed was one of those doctors that took him on without requesting any payment until thereafter. And even though he had an order for rehabilitation, he did not go to just any doctoring facility to receive physical therapy. He went to a very reputable place that at some point was able to receive him and then wait for pay later. But there is no indication or there's no medical note in the record that shows that at the time that Mr. Wright was able to bend his knee or raise his leg that he could work full duty. There's no such note. The only note that returns him to work full duty is at the end of his rehabilitation, which is in April of 2010, I believe. The FCN has given no medical evidence to show that Wright could work, even on a light duty basis, at the time that he was able to move his knee. These representations by FCN about Wright's ability to move his knee are just their own medical opinions that I don't think they're qualified to render. They may be observations, but they do not tell the whole picture of all this medical treatment. We're talking about MMI here, not return to work, right? I'm sorry? We're talking about MMI, not return to work. Yes. Both are different concepts. Absolutely. He was never returned to work full duty. He was able to perform some light duty, but the record shows that he was never accommodated by FCN. It wasn't until he received MMI and full duty work at the end of his rehabilitation that he was able to move on with his life. He did try to work on a limited basis shortly after the accident, and he covered a couple of stories, but there came a time when he could no longer complete his duties, and that is when. You've split your time. Your time is up. Well, Your Honor, thank you, and I respectfully ask that this Court confirm the lower court's decision. Thank you. Thank you, Counsel. Counsel, you'll have five minutes in reply. Very briefly, one thing that was in the Counsel's action was a reflection on recollection, and that is with respect to the lower court's obligation in reviewing the commission's decision. The lower court did not fulfill every step of that requirement for this reason. In the lower court's ruling, the court stated the court does not reach the issue of notice as FCN has failed to allege any prejudice. So the lower court never even made the analysis of whether or not notice was sufficiently given within the time of the statute, and so by putting the cart before the proverbial horse, by saying FCN did not establish prejudice, therefore we're not going to look at notice, is in fact the cart before the horse. It should be in fact notice first, and then if there was some notice, albeit defective, then FCN must establish prejudice. So I would offer that the lower court, that's another step that the lower court did not fulfill when assessing the commission's ruling to determine whether or not the commission even had jurisdiction when it heard Mr. Wright's claim. In addition, in the record. What do you have to say about their other jurisdictional argument that you never even named the treasurer? Sure. During that case, there was no service on the treasurer or on counsel. So during this distinguishable from here, in Bethlehem Steel that we did cite, the attorney was listed, though the client was not, and we would draw the court's attention to a forced reserve case wherein the court affirmatively stated that service on counsel is service on the client because it cited a statute which reads in the disjunctive, in that it used the word or. So in the statute, it indicates that service could be effectuated on the representative of the interest that you're responding against. And so to that extent, I would offer here, the treasurer counsel was in fact served, was named in the precipice. Who's the treasurer's counsel? Is it the attorney general? Yes. So to that extent, the attorney general, assistant attorney general, was in fact named in the precipice. So to that extent, this is completely distinguishable from Doherty, where there was no counsel served. And of course, lawyers receive service for clients. I mean, it's just standard. So to the extent that in this case, counsel for the treasurer was in fact served did appear. There was no prejudice whatsoever to the treasurer because there was a concession that the treasurer was in fact represented by counsel. I want to understand something. The treasurer has been involved in this case since the time of the original arbitration. Is that correct? That's correct. And throughout the entire process, the treasurer was represented by the assistant attorney general. Well, let me back up just a moment. I can't say that the treasurer has been involved for the entire time unless until there was an award and then the treasurer came into the case. So to that extent, prior to that, it would have been the commission. So there's no question then that the treasurer was a party and involved in the case at the time it went to the commission on review. I'm sorry, could you repeat that? At the time it went to the commission on review, the treasurer was a party? No. No? The award specifically says that the treasurer is a party. Not from the award. Caption of the award. The award. Yes, sir. Yes, from the arbitrator? Yes. My understanding is after the assignment of the award that notice had to be given as to who the award would be payable from. Well, I'm only telling you that the arbitrator's award specifically says that it's Kenneth Wright versus FCN Publishing and state treasurer of Illinois, ex-official custodian of the Illinois Workers Benefit Fund. Now, that's what the arbitrator said. Was the treasurer a party when it went before the commission? Well, the attorney general did represent. That's all I asked you at the beginning. It was simple. When did the attorney general enter appearance and represent? At the near the inception of the case. At the exact date. At the inception of the arbitration? Near there. I can't say exactly when. No, that's only because the arbitrator finds, as you can see, there's no comp insurance, right? Yes, that's correct. And so, I mean, that's the only way. That's correct. Okay. How would, upon filing, would the arbitrator know that? That's correct. I'm just trying to get you to answer a very simple question. Certainly. Was the assistant attorney general representing the treasurer of the state of Illinois when this case was before the arbitration? Yes. Okay. And he was also, the assistant attorney general was also representing the treasurer when this case went before the commission? Yes. Okay. And he was also the attorney when it was filed. We understand that. Yes. So there's no question that the attorney general of the state of Illinois knew at the time it received the summons that it was the attorney for the treasurer? That's correct. Okay. That's correct. Now, I'm going to ask a basic question here. Yes, sir. Okay. Upon filing before the arbitrator, when is it that it's known that your client has no comp insurance? When is it that it's known? It's known very near the filing because there's a review that's done, and there's an indication that the final call did not appear on the registry as having workers' comp insurance. Okay. And so what happens procedurally thereafter? Is that when the attorney general has noticed that? The fund could be in jeopardy of... Well, the fund could be responsible for paying any award of company. Yes. In jeopardy. We hope not. I hope there's money there. I understand. But it could be required to... And so then it appears at an arbitration. That's correct. As representing the treasurer. If and when an award is made for the claimant. That's correct. And the attorney general had the opportunity to argue against, obviously, any award... Any award being made payable to the claimant. That's correct, by the commission. Okay. Is there any correction to my questions, just to be fair? Procedurally, that's all. What is she doing? No, no, no, no. I wasn't... That's his argument. I'm just asking procedurally, factually, that's what happens. Is that correct? Okay. Which specific thing do you mean is correct? When the attorney general comes into an arbitration. On behalf of the treasurer, before the arbitrator. Okay. That's all I know. Thank you, counsel, both of you, all three of you, for your arguments. This matter will be taken to advisement. The written disposition shall issue. The court will stand at brief recess.